In re Lawrence R. STONE, Debtor.

John SYLVESTER, Plaintiff,

v.

Lawrence R. STONE, Defendant.

Bankruptcy No. 80–00900.
Complaint No. 80–0231.

United States Bankruptcy Court,
D. South Carolina.

April 29, 1981.

D. Lester Diggs, Aiken, S. C., for plaintiff.

Lawrence R. Stone, pro se.

**J. BRATTON DAVIS, Bankruptcy Judge.**

Alleging that the defendant obtained money through loans from him by false pretenses, false representations, and/or actual fraud, the plaintiff asks the court to determine his claim against the defendant nondischargeable under 11 U.S.C. § 523(a)(2)(A), and for a $14,000 judgment against the defendant as reimbursement for damages resulting from the acts of the defendant.

The alleged false representations or fraud are the defendant's (1) misuse of the loan proceeds in contravention of their loan agreement and (2) implied misrepresentation that he would repay the notes.

## DISCUSSION

The jurisdiction of this court to determine the dischargeability of the defendant's debt to the plaintiff is given by § 523(c) of the Bankruptcy Code, 11 U.S.C. § 523(c). Bankruptcy Rule 409(a) prescribes the procedure for determination of dischargeability—the procedure is not inconsistent with § 523, 3 *Collier on Bankruptcy* ¶ 523.05 (15th ed.), and it has been followed in this adversary proceeding.

Section 727 of the Bankruptcy Code (11 U.S.C. § 727) requires the court to grant an individual debtor in a liquidation case under Chapter 7 a discharge unless certain conditions are met.[1] No objection to discharge

---

1. One of the primary purposes of the bankruptcy act is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of

has been filed in this case. Section 523(a) sets forth the debts that are excepted from the debtor's discharge and for which the debtor can be held personally liable after the discharge is granted.

Section 523(a)(2) excepts from discharge debts "for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—(A) false pretenses, a false representation, or actual fraud, * * *."

The class of liabilities excepted from discharge therein "are those based on obtaining money, property or services, or an extension, renewal, or refinancing of credit (other than a statement respecting the debtor's or an insider's financial condition) by false pretenses, a false representation or actual fraud." 3 *Collier on Bankruptcy* ¶ 523.08 (15th ed.).

"In order that a debt may come within (this) exception money * * * must actually have been obtained by the false pretenses or representations or by means of actual fraud." *Id.* at ¶ 523.08(1).

"The frauds included in the portion of § 523(a)(2)(A) under discussion are those which in fact involves (sic) moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly or fraudulently made, and that [they] were relied upon by the other party. * * * If the property (or services) was obtained prior to the making of any false representation, subsequent misrepresentations will have no effect upon the discharge of the debt. * * *." *Id.* at ¶ 523.08(4); *See also, In Re Ashley*, 5 B.R. 262, 2 C.B.C. 949 (Bkrtcy. E.D.Tenn.1980).

■ The plaintiff herein challenging the dischargeability of the defendant's debt,

bears the burden of proof. *In re Green*, 5 B.R. 247, 2 C.B.C.2d 905 (Bkrtcy.N.D.Ga. 1980); *In re Wray*, 1 C.B.C.2d 59 (M.D. Tenn.1979).

■ The proof must be clear, cogent and convincing evidence.[2] Fraud is never presumed. It has always been fundamental that the conduct of mankind is presumed to be upright and those who allege to the contrary have the burden of strict proof as to every essential allegation. *In re Ashley*, 5 B.R. 262, 2 C.B.C.2d 949 (Bkrtcy.E.D. Tenn.1980). *See also: Sweet v. Ritter*, 263 F.Supp. 540 (D.C.Va.1967).

In *Hightower v. Mower*, 1 B.C.D. 378, 380 (E.D.Va.1974) it is stated:

"A creditor challenging a discharge bears quite a burden under the law. Exceptions to discharge are to be 'construed strictly against the objector,' *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th Cir. 1928), and 'liberally in favor of the bankrupt.' *Roberts v. Ford*, 169 F.2d 151 (4th Cir. 1948)."

Between September 24, 1979 and March 20, 1980, the plaintiff made four loans to the defendant who was engaged in the business of buying, reconditioning, and selling used automobiles with the understanding that the funds were to be used by the defendant as investment capital. These loans were evidenced by four 90-day promissory notes totalling approximately $20,000. The defendant has signed a confession of judgment acknowledging a balance due on these notes of approximately $15,000.

## I

■ The plaintiff alleges that the defendant acted in bad faith by failing to make timely payments and by fraudulently drawing checks totalling approximately

---

pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Accord, e. g., Harris v. Zion's Savings Bank & Trust Co.*, 317 U.S. 447, 451, 63 S.Ct. 354, 357, 87 L.Ed. 390 (1943); *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 218, 62 L.Ed. 507 (1918); *Perez v.*

*Campbell*, 400 U.S. 818, 91 S.Ct. 71, 27 L.Ed.2d 45 (1971).

2. *In re Barlick*, 1 B.C.D. 412 (D.R.I.1974), (the plaintiff-lender's burden in dischargeability cases is that of "clear and convincing evidence of all of the elements of its case"); *American Finance Corp. v. Arden*, 2 B.C.D. 204 (D.R.I. 1975).

$19,000 on the business checking accounts for his own personal use.

The defendant, in explaining his handling of the funds, testified that payments were not made timely because he found it necessary to use the proceeds of the first sales and additional loans to fund his gradually expanding business including investment in additional cars for sale, reconditioning used cars, increased costs of sales and increased overhead. He said that the plaintiff knew of this and continued to lend him money for what they both expected to be a profitable business; nevertheless, subsequent general economic conditions adversely affected his business to the point that sales were virtually eliminated while the costs of the business continued, contributing to the eventual collapse of the business.

The defendant, contending that the funds which he used for his own personal use were within a reasonable salary range, testified that he had withdrawn funds, when available, from the business for his personal expenses rather than drawing a salary; but he disputed the plaintiff's claim that such withdrawals amount to $19,000. He stated that more than $10,000 of these withdrawal checks were payable to "cash"; and that this was his usual method of paying his business—as opposed to personal—expenses. He also stated that some of the other checks had been used to pay business expenses rather than personal expenses.

Although the parties orally agreed that the defendant was to remit to the plaintiff a portion of the proceeds of the sale of his automobiles for repayment of the loans, there appears no definitive agreement as to when, how, or where payments were to be remitted or precisely how these funds were to be used in the business.

The evidence supports the plaintiff's contention that, instead of remitting to the plaintiff the proceeds of the automobile sales immediately after each sale, the defendant had used the proceeds to pay his salary, some personal and business expenses including periodic payments on his obligations to the plaintiff. The plaintiff and the defendant had no specific agreement as to the terms of repayment, yet the plaintiff continued to make loans to the defendant. From this, it may be assumed that he acquiesced in the defendant's handling of the loans.

Although the defendant's method of running his business may have been unorthodox and he may have failed to follow accepted business practices, these facts do not establish an intentional wrong; nor do they involve moral turpitude. The plaintiff has not presented clear, cogent and convincing evidence of the defendant's alleged fraud in the use of the loan proceeds so as to render the plaintiff's claim nondischargeable under § 523(a)(2)(A).

II

We turn now to the plaintiff's allegation of fraud relating to the defendant's implied misrepresentation that he would repay the notes. No overt misrepresentation is alleged; none has been shown. The misrepresentation upon which the plaintiff relies is that the defendant's execution of the several notes constitutes a false representation that the defendant intended to repay the notes, thus coming within the proscription of § 523(a)(2)(A).

■ In order to recover in this cause of action for fraud and deceit the plaintiff must prove that the defendant made a material representation; that it was false; that *when it was made* the defendant knew it was false; that it was made with the intention that it should be acted upon by the plaintiff; that the plaintiff was ignorant of its falsity; that he relied on its truth; that he had a right to rely thereon; and that he thereby suffered injury. *Davis v. Upton*, 250 S.C. 288, 157 S.E.2d 567 (1967).

"The general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. However, where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepre-

sentation of a fact, and actionable as such." *Id.* at 568.

 A false representation, such as herein alleged, may be implied; nevertheless, it must have been made knowingly and fraudulently in order to render the debt nondischargeable. *In re Nichol*, 6 B.R. 842 (Bkrtcy.D.Me.1980).

"The (plaintiff) having charged the (defendant) with fraud and deceit as the basis for his cause of action must establish such by evidence that is clear, cogent and convincing and the failure to prove any one of the elements of fraud and deceit is fatal to recovery." *Davis v. Upton, supra* at 567.

 The plaintiff has not presented clear, cogent and convincing evidence that the defendant intended and purposed to deceive and not repay the loan either at the time when he requested the loan or when he received the loan proceeds.

The defendant, on the other hand, has presented credible evidence that at the time that the debt was incurred he had a reasonable and honest expectation to repay it.

The evidence does not warrant a finding that *at the time* when each loan was made, either that the defendant knew that he was making an untrue statement by promising to repay the respective loan, or that he made the promise under such circumstances as to raise a presumption of knowledge. That key time element is missing.

"Unless the evidence supports the inference that (the defendant) had no intention of performing his promise at the time he made it, his statement would not be the representation of a fact as existing and the failure to make good that promise would be nothing more than the breach of a promise. * * * The mere breach of a contract does not constitute fraud." *Davis v. Upton, supra* at 569.

### FINDING OF FACT AND CONCLUSION OF LAW

It is the finding of the court that the defendant did not obtain the money from the plaintiff by false pretenses, false representations and/or actual fraud within the provisions of § 523(a)(2)(A), and that the debt therefore is dischargeable under § 727.

### ORDER

It is therefore, ORDERED, ADJUDGED AND DECREED that the debt of the defendant to the plaintiff is dischargeable under § 727 of the Bankruptcy Code (11 U.S.C. § 727).

Any judgment, heretofore or hereinafter, obtained in any court other than this court in respect to the aforementioned indebtedness is null and void as a determination of the personal liability of the debtor in connection with the said indebtedness.

John Sylvester is hereby enjoined from instituting or commencing any action or employing any process to collect the aforesaid indebtedness as a personal liability of Lawrence R. Stone.